OPINION
On April 17, 1996, the Fairfield County Grand Jury indicted appellant, Larry L. Russell, Sr., on one count of escape in violation of R.C. 2921.34 and one count of assault in violation of R.C. 2903.13.
A jury trial commenced on March 18, 1997. After the jury began deliberating, the trial court held a contempt hearing. The trial court found appellant disrupted the administration of justice by filing a disruptive document and continually ignoring the trial court's instructions. By judgment entries filed March 28, 1997, the trial court sentenced appellant to a total term of thirty days in jail and imposed a total fine of $600. The jury returned and found appellant guilty of escape and not guilty of assault. By judgment entry filed April 2, 1997, the trial court sentenced appellant to a term of one and one-half years to be served after the thirty day sentence for contempt, and imposed a $500 fine plus costs.
Appellant filed a notice of appeal and this matter is now before this court for consideration. Assignments of error are as follows:
I
 IN THIS CASE, THE LOWER COURT ABUSED ITS DISCRETION BY NOT CONSIDERING THE FACTS AND LAW PRESENTED REGARDING: (1) THE AUTHORITY OF THE LOWER COURT TO PROCEED AGAINST APPELLANT WITHOUT HAVING SUBJECT MATTER JURISDICTION, (2) THE FIDUCIARY DUTY OF THE JUDGE TO PROTECT THE UNALIENABLE RIGHTS OF THE PEOPLE, (3) THE FACT THAT THE PROSECUTION DID NOT PROVE ALL THE ELEMENTS OF THE CRIME, (4) THE FACT THAT THE LOWER COURT CASE WAS BASED ON AN ALLEGED VIOLATION IN ANOTHER COUNTY WHICH WAS NEVER ADJUDICATED, AND (5) THE CONTEMPT PROCEEDINGS BEING CONDUCTED BY ONE JUDGE.
II
 THE DEFENDANT WAS DENIED DUE PROCESS BECAUSE THE RECORD IN THIS CASE SHOWS THAT THERE WAS NO PROOF OF SUBJECT MATTER JURISDICTION BY THE PROSECUTION EVEN THOUGH PROPERLY CHALLENGED BY APPELLANT AND MANY QUESTIONS OF FACT OR LIABILITY WERE CONCLUSIVELY PRESUMED AGAINST APPELLANT.
 I
Appellant claims the trial court did not have subject matter jurisdiction to hear his case. Appellant claims the statutes under which he was charged "do not adhere to several constitutional provisions of the Constitution of the state of Ohio (1851)." Appellant's Brief at 6. We disagree.
Appellant claims the statutes and the Ohio Revised Code (characterized by appellant as "a collection of books") do not have enacting clauses therefore, the statutes under which he was charged violate Section 15 (B), Article II, of the Ohio Constitution. The version of R.C. 2921.34 in effect at the time of appellant's arrest resulted from the enactment of H.B. No. 42, effective February 9, 1994, as reported in 93 Ohio Laws File 74. The version of R.C. 2903.13 in effect at the time of appellant's arrest resulted from the combined enactments of S.B. No. 116 and H.B. No. 571, effective September 29, 1994 and October 6, 1994, as reported in 1994 Ohio Laws File 155 and Ohio Laws File 165, respectively. After all of the above titles appear the words: "Be it enacted by the General Assembly of the State of Ohio." Therefore, both statutes contain the required enacting language.
Appellant further claims the statutes and the Ohio Revised Code do not contain titles therefore, the statutes under which he was charged violate Section 15 (D), Article II of the Ohio Constitution. A review of H.B. No. 42, S.B. No. 116 and H.B. No. 571 establishes the legislation contains titles which are specific.
Appellant also claims the statutes and the Ohio Revised Code "do not make it clear by what authority they exist." Appellant's Brief at 17. The Ohio Revised Code is a compilation of existing statutes. The General Assembly passed the entire code in House Bill 1, effective October 1, 1953. The code was properly enacted and signed into law and is not an unknown or unauthorized authority.
Assignment of Error I is denied.
 II
Appellant claims he was denied due process in the prosecution's failure to prove all the elements of the offense charged and in the trial court's finding of contempt. We disagree.
On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction. State v. Jenks (1991),61 Ohio St.3d 259. On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Martin (1983), 20 Ohio App.3d 172, 175.
Appellant was convicted of escape in violation of R.C.2921.34:
 (A) No person, knowing he is under detention or being reckless in that regard, shall purposely break or attempt to break the detention, or purposely fail to return to detention, either following temporary leave granted for a specific purpose or limited period, or at the time required when serving a sentence in intermittent confinement.
Sergeant Michael Dailey of the Columbus Police Department testified to attempting to serve an outstanding warrant for no operator's license upon appellant and to arrest him at a meeting organized by a group called "Our One Supreme Court." The meeting was being held on February 27, 1996 in the Village of Lithopolis. Sergeant Dailey described the attempted arrest as follows:
 * * * I said, `Mr. Russell ___' Actually, I believe, I said, `Larry, I'm Sergeant Dailey. I have a warrant for your arrest.' And I was holding the Xerox copy in my hand. He did not acknowledge me, did not say anything. He did an immediate about-face, walked back around the table towards the rear door.
Q Did you do something at that point?
 A Yes. I cut off his route of travel and grabbed a hold of his — I believe it was his right arm and stopped him. And I actually physically handed him the warrant and he took it from me. I said, `Mr. Russell, you are under arrest.' At that particular time, he jerked away from me and turned around and just kind of gave me a body shove and started to walk towards the front, changing his direction. As he did, he threw the warrant on the floor and he started yelling to the audience, `Help me. Help me. They're trying ___' or, `He's trying to arrest me,' or `They're trying to arrest me.' At the same time, simultaneously, I was grabbing a hold of Mr. Russell again and he's struggling with me trying to break free. I'm holding onto him. And at this time, the crowd starts to get up seeing that there's something going on. We struggled so much, we actually ended up over next to the tables where the literature was. And I'm holding onto him and he's pushing up against me and struggle, trying to get away. And I said, `Mr. Russell, you're under arrest. Let's go outside. Let's make this easy on ourselves and just do what we need to do.' He continued to struggle. A male white came up, was prying my hands loose from the grasp of Mr. Russell as Mr. Russell was also struggling to break loose. Mr. Russell pushed me away at that point and started to walk up towards the front of the building again. By this time, just about everyone in the audience had started to gather. Other people were grabbing towards me. I grabbed Mr. Russell again. We're struggling.
* * *
 Mr. Russell kind of twisted or turned and forearmed me, jerking away at the same time, hitting me in the upper body, and made it through the crowd. And the crowd closed on me and I saw Mr. Russell running towards the front door at the trot. I —
* * *
 I didn't want to create a physical fight. I didn't want to have to use force. So I'm only physically trying to hold onto his arms and his body. I was actually, at that point, trying to get him in an arm bar with his arm locked behind him. And I was unable to do that because of all the interference.
* * *
 Q Now, you also indicated that the Defendant struck you. And he struck you, again, how?
 A The final time — I was trying to get his arm back behind him in an arm bar, in an arm lock where you can twist it back up and behind his back. And he struggled and pulled away kind of spinning and forearming me in the upper body, in this portion of the body, forearming and pushing at the same time. And that's when he was able to escape. I couldn't grab a hold of him again because of the interference of the crowd.
* * *
 Q All right. Once he got from your grasp, what happened?
 A He fled towards the front door. And I could see him running at a trot towards the front door. I couldn't make it through the crowd because of the interference. People were grabbing a hold of me and trying to hold me back, you know, yelling at me saying, `What are you trying to do? Why are you here?' By the time I got through the crowd, he had exited the front door. And I took off at a run exiting the front door myself.
T. at 41-46, respectively.
Gregory Pychewicz, a detective with the Columbus Police Department, observed appellant refuse to accept the warrant, jerk away, bolt for the front door, flee down the street into a bar and escape through a back door. T. at 125, 127-129. Samuel Cicchino, chief deputy with the United States Marshal's Office, observed Sergeant Dailey's attempt to serve the warrant and place appellant under arrest. T. at 255. In an effort to quell a potentially dangerous situation, Marshall Cicchino told Sergeant Dailey to release appellant whereupon appellant fled the building. T. at 254, 270-271.
Appellant testified once he heard Marshall Cicchino tell Sergeant Dailey to release him, he believed he was free to go. T. at 322. Appellant testified no one told him he was under arrest nor served him with an arrest warrant on the evening in question. T. at 322-323.[1]
With two contradictory versions of the events of February 27, 1996, appellant versus Sergeant Dailey and Detective Pychewicz, the triers of fact had the responsibility to determine the credibility of the witnesses and the weight of their testimony.State v. DeHass (1967), 10 Ohio St.2d 230. Upon review, we find sufficient credible evidence to support appellant's conviction beyond a reasonable doubt and no miscarriage of justice.
Appellant argues because the underlying offense, no operator's license, was not tried prior to the escape charge, his conviction for escape was improper. We note the illegality of an arrest is unavailable as a defense to escape. State v. Harkness
(1991), 75 Ohio App.3d 7.
Appellant claims the trial court erred in its procedure regarding the contempt charge. The trial court found appellant guilty of direct contempt defined in R.C. 2705.01 as follows:
 A court, or judge at chambers, may summarily punish a person guilty of misbehavior in the presence of or so near the court or judge as to obstruct the administration of justice.
By judgment entries filed March 28, 1997, the trial court stated its reasons for finding appellant in contempt on two occasions:
 The Court finds that the Defendant, during his closing argument to the jury, consistently ignored the Order of the Court to cease arguing inappropriate law to the jury, and to only argue facts that were in evidence before the jury. The Court further finds that Defendant's repeated violations of direct order of the Court constitutes direct criminal contempt, and that it warranted a summary proceeding to suppress the court-disrupting behavior and to restore order to the proceedings.
* * *
 The Court finds that the Defendant filed a document styled `Plea for Equitable Injunctive Relief Refusal of Order' with the Clerk of Courts on March 21, 1997, and served a copy of said document upon Judge Joseph T. Clark, David L. Landefeld, and the Clerk of Courts of Fairfield County, Ohio. Within said document the Defendant alleges the following:
 `this said order is a violation of duty which evidences Judge Joseph T. Clark's Bad Faith, Deception, Fraud, Legal and Active Negligence
exercising Unwanted Abuse of Discretion, Excess of Statutory authority and Agency, and a violation of Constitutional limitations pursuant to the Fifth Article of Amendment to the Constitution of the United States of America, violating Demandant's Unalienable [sic] Right of Due Process of Law. Judge Joseph T. Clark's duties as Judge in the Court of Common Pleas of Fairfield County, Ohio, do not include the establishing if [sic] a constructive fraud upon the Demandant. Such fraud neither offers nor gives any immunity for his actions. Fraud vitiates everything, including judgments.'
 The Court finds, under the authority of Federal Land Bank Association of Fostoria v. Walton et al, 99 Ohio App.3d 729
(Wyandot County 1995), that said action by the Defendant herein constitutes direct criminal contempt, because the Defendant prepared an official document and filed it with the Clerk of Courts knowing that the trial judge would read it. The Defendant further served copies of the document on all parties involved in the litigation. Furthermore, the Defendant's act of attacking the Trial Judge's ability to neutrally and impartially manage the litigation was so disruptive that it warranted a summary proceeding to suppress the court-disrupting misbehavior and to restore order to the proceedings.
During a November 8, 1996 conference, the trial court had specifically cautioned appellant about disrupting the administration of justice and warned him "you may be, in fact, faced with contempt of court." November 8, 1996 T. at 78. In fact, by judgment entry filed March 21, 1997, the trial court found appellant in contempt of court for disrupting the administration of justice and ordered him to jail until appellant "could purge himself and be returned to the courtroom proceedings when he conducts himself in an orderly and civil manner." By judgment entry filed March 25, 1997, the trial court found "Defendant purged himself of contempt of this Court" and "upon the representations of the Defendant, that the Defendant will conduct himself in the proceedings herein in an orderly and civil manner."
Given the tenor of the proceedings, the trial court's caution and the previous contempt, we find the trial court did not violate procedure in sua sponte handling appellant's behavior as direct contempt. Upon review, we find sufficient credible evidence to support appellant's convictions for contempt beyond a reasonable doubt.
Assignment of Error II is denied.
The judgment of the Court of Common Pleas of Fairfield County, Ohio is hereby affirmed.
By Farmer, P.J. Gwin, J. and Hoffman, J. concur.
 JUDGMENT ENTRY
CASE NO. 97 CA 31
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Court of Common Pleas of Fairfield County, Ohio is affirmed.
[1] On November 7, 1995, appellant had fled the first server of the same warrant. T. at 30-31. One to two days thereafter, Sergeant Dailey had a telephone conversation with appellant concerning the arrest warrant. T. at 32.